IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JONATHAN JEFFERY ANDERSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:12-cv-88 (CAR) |
| | : | |
| JOE CHAPMAN *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

## RECOMMENDATION

Before the Court is the Motion for Summary Judgment filed by Defendants Joe Chapman, Wade Harris, and Deborah Atkinson. Doc. 21. Because Plaintiff Jonathan Jeffery Anderson fails to demonstrate any genuine issue of material fact concerning either his conditions of confinement claim or his due process claim, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

PROCEDURAL HISTORY

On July 5, 2012, Plaintiff Jonathan Jeffery Anderson filed his complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants Joe Chapman, Wade Harris, and Deborah Atkinson violated his constitutional rights by confining Plaintiff in isolation for five days and in segregation for almost two years when he was a pretrial detainee at the Walton County Jail. Doc. 1. In relief, Plaintiff requested an injunction, monetary damages, and any other relief that the Court deems appropriate. Id. Following a frivolity review of Plaintiff's complaint under 28 U.S.C. § 1915A, only his conditions of confinement claim and his due process claim against Defendants were permitted to proceed. Doc. 5. On January 24, 2013, Defendants filed their Motion for Summary Judgment. Doc. 21. Plaintiff responded on February 21, 2013, and Defendants replied on March 5, 2013. Docs. 26, 27.

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the facts of this case are as follows. On July 8, 2010, Plaintiff was arrested on numerous felony charges, including rape, child molestation, and sexual battery. Pl.'s Compl. (Doc. 1); Atkinson Aff. (Doc. 21). After Plaintiff was booked as a pretrial detainee at the Walton County Jail, jail staff immediately placed him in isolation and under suicide watch. Id. This initial placement occurred because the arresting detectives warned jail staff that Plaintiff had made statements indicating that he was "extremely suicidal." Thompson Aff. (Doc. 21). Pursuant to jail policy, any prisoner found to be suicidal must remain in isolation and under suicide watch until the prisoner is examined and cleared by a mental health professional. Id.

Plaintiff remained under suicide watch for five days during which time he lacked access to clothing, a mattress, a blanket, toilet paper, water, or showers. Pl.'s Compl. (Doc. 1). While in isolation, Plaintiff was forced to sleep on the floor with dried urine, blood, and feces. Id. When Plaintiff complained to Office Kimmerle, who is not a party in this case, Officer Kimmerle told Plaintiff that isolation is "how child molesters are punished in Walton County." Id. Plaintiff does not allege that Defendants Chapman, Harris, and Atkinson had any personal knowledge of, or direct involvement in, his placement in the suicide watch cell. Id.

Pursuant to jail policy, jail staff must monitor any prisoner in the suicide watch cell every fifteen minutes. Harris Aff. (Doc. 21); Atkinson Aff. (Doc. 21). The cell is located near the medical area. Id. The walls and floor of the suicide watch cell are padded, and the cell contains a floor grate for the discharge of bodily fluids and waste. Id. Prisoners under suicide watch are not permitted to have any items that could be used to harm themselves. Id. They are provided with paper uniforms designed to minimize the risk of hanging. Id. Any prisoner under suicide watch is

provided with fresh paper uniforms and drinking water in foam cups upon request. Id. They also are permitted to shower on a daily basis during which time the suicide watch cell is cleaned. Id.

On July 13, 2010, Plaintiff was examined by a non-party clinical psychologist who determined that Plaintiff could be removed from the suicide watch cell. Thompson Aff. (Doc. 21). That same day, Plaintiff was moved from the suicide watch cell to an interim cell in Cellblock One pending the completion of the classification process. Atkinson Aff. (Doc. 21). On July 14, 2010, Plaintiff was moved to Cellblock Twelve, which he describes as "an administrative segregation housing unit," where he remained for almost two years. Pl.'s Compl. (Doc. 1). While in Cellblock Twelve, Plaintiff was kept on "23 hour lockdown." Id. According to Plaintiff, Defendants Chapman and Harris instituted the policy that resulted in Plaintiff's placement in administrative segregation "due simply to the nature of his charges," and Defendant Atkinson authorized Plaintiff's placement in administrative segregation. Id.

LEGAL STANDARDS

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the nonmoving party

to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324-326. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff alleges that Defendants violated his right to be free from cruel and unusual punishment based on the initial conditions of his confinement in isolation and under suicide watch for five days in July 2010. In addition, Plaintiff alleges that Defendants violated his due process rights by subsequently placing him in administrative segregation from July 2010 to June 2012 based on the nature of his charges. With reference to his first claim, Plaintiff does not allege, and the evidence in the record does not indicate, that Defendants Chapman, Harris, or Atkinson had any personal knowledge of, or direct involvement in, the placement of Plaintiff in the suicide watch cell. With reference to his second claim, Plaintiff alleges that Defendants Chapman and Harris instituted an unspecified policy that caused Plaintiff's placement in administrative segregation and that Defendant Atkinson authorized Plaintiff's placement in administrative segregation.

The evidence in the record, construed in the light most favorable to Plaintiff, does not demonstrate that the initial conditions of Plaintiff's confinement in isolation and under suicide watch for five days amounted to cruel and unusual punishment. The evidence also fails to demonstrate that the subsequent conditions of Plaintiff's confinement in administrative

segregation are so atypical from ordinary prison life to create a liberty interest entitling Plaintiff to due process. Because Plaintiff fails to present any specific evidence demonstrating that there are genuine issues of material fact concerning either his conditions of confinement claim or his due process claim, Defendants are entitled to judgment as a matter of law.

A.      Plaintiff's Conditions of Confinement Claim

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment. U.S. CONST. AMEND. XIII; Chandler v. Crosby, 379 F.3d 1278, 1288, n. 20 (11th Cir. 2004). The Eighth Amendment's prohibition on conditions of confinement that amount to cruel and unusual punishment applies to pretrial detainees through the Fourteenth Amendment's due process clause. Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998). Even so, the standard under the Fourteenth Amendment is identical to the standard under the Eighth Amendment. Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005). Because "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments," this Recommendation refers to both Amendments interchangeably but mentions the Eighth Amendment more often. Marsh v. Butler County, 268 F.3d 1014, 1024, n. 5 (11th Cir. 2001).

"[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'" Chandler, 379 F.3d at 1289, quoting Rhodes, 452 U.S. at 347. There is a two-prong showing necessary to state a viable conditions of confinement claim. "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious." Chandler, 379 F.3d at 1289, quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992). That is, at a

5

minimum, the prisoner must show that the particular condition presents "an unreasonable risk of serious damage to his future health or safety." Chandler, 379 F.3d at 1289. "Second, the prisoner must show that the defendant prison officials 'acted with a sufficiently culpable state of mind' with regard to the condition at issue." Id., quoting Hudson, 503 U.S. at 8. That is, the prisoner must show that the prison official acted with "deliberate indifference." Chandler, 379 F.3d at 1289. "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted).

In this case, Plaintiff fails to present specific evidence tending to show that genuine issues of material fact exist concerning the objective component of his conditions of confinement claim. There is no evidence in the record that the conditions of Plaintiff's confinement in isolation and under suicide watch for five days after his arrest posed an unreasonable risk of serious damage to his future health and safety. Chandler, 379 F.3d at 1289. The record indicates that Plaintiff did not submit any requests for medical services until July 22, 2010, which is 14 days after Plaintiff's initial placement in isolation and under suicide watch. Mulkey Aff. (Doc. 21). In his first request for medical services, Plaintiff sought medical attention because "[m]y right foot has been numb and tingling for 13 days. Need to cut nails too." 7/22/10 Request Form (Doc. 21 at 37). Although the conditions in the suicide watch cell, as described by Plaintiff, were deeply unpleasant, none of the conditions appears to have been "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Chandler, 379 F.3d at 1289 (citation omitted). The record indicates that unidentified jail staff placed Plaintiff in isolation and under suicide watch to prevent him from harming himself because Plaintiff had made statements to the arresting detectives indicating that he was "extremely suicidal." 7/8/10

Progress Note (Doc. 21 at 60); Thompson Aff. (Doc. 21); Harris Aff. (Doc. 21). The record further indicates that Plaintiff's initial placement ended the same day that a clinical psychologist examined Plaintiff and ordered jail staff to discharge Plaintiff from suicide watch. Atkinson Aff. (Doc. 21); Thompson Aff. (Doc. 21). Other district courts in this Circuit have granted summary judgment in cases involving analogous conditions, including one case in which the pretrial detainee remained in the suicide watch cell for approximately thirty days—much longer than the five days alleged by Plaintiff here. See e.g., White v. Marshall, 2008 WL 4826283 *6-9 (M.D. Ala. 2008). As such, there is no basis to conclude that genuine issues of material fact exist concerning the objective component of Plaintiff's first claim.

Plaintiff also fails to present specific evidence tending to show that genuine issues of material fact exist concerning the subjective component of his conditions of confinement claim. There is no evidence in the record that any of the named Defendants had any personal knowledge of, or direct involvement in, the placement of Plaintiff in isolation and under suicide watch. Harris Aff. (Doc. 21); Atkinson Aff. (Doc. 21). Plaintiff does not allege, much less present specific evidence, tending to show that Defendants Chapman, Harris, or Atkinson acted with a sufficiently culpable state of mind regarding the challenged conditions in the suicide watch cell. Chandler, 379 F.3d at 1289. Stated another way, Plaintiff does not allege sufficiently specific facts to show that Defendants acted with deliberate indifference, meaning that any named Defendant had: (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. Farrow, 320 F.3d at 1245. Insofar as Plaintiff indiscriminately implicates every named Defendant, Plaintiff ignores the legal principle that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person

knows." Burnette v. Taylor, 533 F.3d. 1325, 1331 (11th Cir. 2008) (citations omitted). As such, there is no basis to conclude that genuine issues of material fact exist concerning the subjective component of Plaintiff's first claim.

Simply stated, even after viewing the record and all reasonable inferences in the light most favorable to Plaintiff, Plaintiff presents no specific evidence tending to show that the conditions in the suicide watch cell were sufficiently serious or that Defendant were sufficiently culpable. Accordingly, there are no genuine issues of material fact concerning Plaintiff's conditions of confinement claim, and Defendants are entitled to judgment as a matter of law regarding this claim.

B.   Plaintiff's Due Process Claim

The Fourteenth Amendment protects against deprivations of "life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV. As life and property are not at issue here, Plaintiff is entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment. See Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999). A liberty interest protected by the Fourteenth Amendment may arise from the due process clause itself, or a state may create a liberty interest. See Sandin v. Connor, 515 U.S. 472, 483-484 (1995); Al-Amin v. Donald, 165 Fed. Appx. 733, 738 (11th Cir. 2006). In the prison context, a liberty interest may arise from the due process clause itself where the conditions of confinement create a circumstance causing the prisoner's confinement to exceed the sentence imposed by the court. See Sandin 515 U.S. at 484. Additionally, a state may create a liberty interest by imposing a deprivation that amounts to an "atypical and significant hardship on the inmate in relation to the ordinary conditions of prison life." Id.

A prisoner does not have an inherent constitutional right to be free from confinement in segregation. See Sandin 515 U.S. at 487; see also Al-Amin, 165 Fed. Appx. at 738. Therefore, a prisoner has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions of confinement. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of confinement in relation to the ordinary incidents of prison life, and not to the language of the regulations regarding those conditions. Id. at 484; Wallace v. Hamrick, 229 Fed. Appx. 827, 830 (11th Cir. 2007). Courts also should consider the duration of the confinement in segregation when determining whether the confinement constitutes an atypical and significant hardship. See Al-Amin, 165 Fed. Appx. at 738; see also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In this case, the nature of the conditions in administrative segregation at the Walton County Jail does not amount to such a dramatic departure from the ordinary incidents of prison life to create a liberty interest entitling Plaintiff to due process. Plaintiff summarily contends that he remained on "23 hour lockdown" throughout his placement in Cellblock Twelve "due simply to the nature of his charges." Pl.'s Compl. (Doc. 1). According to Plaintiff, Defendants Chapman and Harris instituted an unspecified policy that caused Plaintiff's placement in administrative segregation, and Defendant Atkinson authorized Plaintiff's placement in administrative segregation. Id. Critically, however, Plaintiff does not allege, much less present specific evidence, tending to show that his placement in administrative segregation somehow imposed an "atypical, significant deprivation" sufficient to give rise to a constitutionally protected liberty interest. Sandin, 515 U.S. at 486. Plaintiff also does not allege sufficiently specific facts to show that his placement in Cellblock Twelve subjected him to harsher conditions than other pretrial

detainees or convicted inmates housed at the Walton County Jail. Insofar as Plaintiff would have preferred placement in a different cellblock, Plaintiff's apparent preference ignores the legal principle that inmates have no protected liberty interest in a particular custody classification. See Matthews v. Moss, 506 Fed. Appx. 981, 983 (11th Cir. 2013). Further, there is no evidence whatsoever that any of the named Defendants placed Plaintiff in administrative segregation "for the purpose of punishment." Kibwika v. Broward County Sheriff's Office, 453 Fed. Appx. 915, 919 (11th Cir. 2012). To the contrary, the record indicates that Plaintiff's placement in Cellblock Twelve was based on several legitimate considerations, including minimizing the risk of violence between pretrial detainees and other inmates. Harris Aff. (Doc. 21); Atkinson Aff. (Doc. 21).

Plaintiff's placement in administrative segregation for almost two years also does not give rise to a liberty interest. Although confinement in segregation for over one year may give rise to a liberty interest, confinement in segregation, even for a much longer period, does not necessarily constitute an atypical and significant hardship giving rise to a liberty interest. Compare Williams, 77 F.3d at 374, n. 3 (liberty interest assumed to be created by one year of solitary confinement), with Al-Amin, 165 Fed. Appx. at 738 (no liberty interest created by confinement in segregation for three years). As such, Plaintiff's placement in administrative segregation at the Walton County Jail for almost two years, under conditions that were not a dramatic departure from the ordinary incidents of prison life, does not constitute an atypical and significant hardship entitling Plaintiff to due process.

Additionally, the evidence in the record here distinguishes this case from other cases in which the Eleventh Circuit has found that a pretrial detainee sufficiently alleged a liberty interest. For example, the Eleventh Circuit previously concluded that a pretrial detainee's

10

detailed allegations, if true, established a liberty interest when the pretrial detainee, unlike other pretrial detainees or convicted prisoners, was placed in administrative detention in conditions that amounted to solitary confinement, including being locked in a closet-sized cell with minimal contact with human beings for over 500 days. See Magluta v. Samples, 375 F.3d 1269, 1275–1276, 1282 (11th Cir. 2004).

By contrast, the evidence in this case establishes that Plaintiff had regular opportunities to interact with other inmates and jail staff throughout his placement in Cellblock Twelve. Atkinson Aff. (Doc. 21). Although Plaintiff initially received one hour of recreation each day, Plaintiff subsequently received four hours of recreation each day. Harris Aff. (Doc. 21); Atkinson Aff. (Doc. 21). During recreation, Plaintiff and other inmates in Cellblock Twelve were free to move outside their individual cells. Atkinson Aff. (Doc. 21). In addition, Plaintiff's individual cell assignment changed on four separate occasions between April 2011 and June 2012. Id. Two of these changes were made based on requests by Plaintiff to be kept away from certain inmates. Id. As such, the nature of the conditions of Plaintiff's confinement in administrative segregation here were entirely distinct from the nature of the conditions of confinement discussed in Magluta.

Simply stated, even after viewing the record and all reasonable inferences in the light most favorable to Plaintiff, Plaintiff presents no specific evidence tending to show that he had a liberty interest related to his confinement in administrative segregation for almost two years. Accordingly, there are no genuine issues of material fact concerning Plaintiff's due process claim, and Defendants are entitled to judgment as a matter of law with regard to this claim.

CONCLUSION

Because Plaintiff fails to demonstrate any genuine issue of material fact concerning either his conditions of confinement claim or his due process claim, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 21) be **GRANTED**.

Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of July, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge